1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT FOR THE

7               EASTERN DISTRICT OF CALIFORNIA

8

9  EVERARDO SILVA CEJA,        )      No. CV-F-08-1985 OWW
                               )      (No. CR-F-03-5144 OWW)
10                             )
                               )      MEMORANDUM DECISION AND
11           Petitioner,       )      ORDER DENYING PETITIONER'S
                               )      MOTION TO VACATE, SET ASIDE
12      vs.                    )      OR CORRECT SENTENCE PURSUANT
                               )      TO 28 U.S.C. § 2255 AND
13                             )      DIRECTING CLERK OF COURT TO
   UNITED STATES OF AMERICA,   )      ENTER JUDGMENT FOR
14                             )      RESPONDENT
                               )
15           Respondent.       )
                               )
16  _____)

17

18      On December 30, 2008, Petitioner Everardo Silva Ceja,

19  proceeding *in pro per*, timely filed a motion to vacate, set aside

20  or correct sentence pursuant to 28 U.S.C. § 2255.

21      A.   Background.

22      On April 3, 2003, Petitioner was charged with being a felon

23  in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

24  The Indictment alleged that:

25              defendant herein, on or about October 23,
                2001, in the County of Fresno, State and
26              Eastern District of California, after having

                              1

been previously convicted of Discharge of a
Firearm at an Occupied Vehicle, in violation
of California Penal Code Section 244, on or
about July 9, 1993, in the Superior Court of
California, County of Fresno, Case Number
486174-6; Felony Spousal Abuse, in violation
of California Penal Code Section 273.5, on or
about October 16, 1997, in the Superior Court
of California, County of Fresno, Case Number
581888-5; and, Felony Battery on a Peace
Officer, in violation of California Penal
Code Section 243(c), on or about December 19,
1998, in the Superior Court of California,
County of Fresno, Case Number 615118-7,
crimes punishable by a term of imprisonment
exceeding one year, did knowingly possess a
firearm, to wit: a Jennings, model 38, .380
caliber semiautomatic pistol, and Winchester
.380 caliber ammunition, in and affecting
commerce, in that said firearm and ammunition
had been shipped and transported in
interstate and foreign commerce, in violation
of Title 18, United States Code, Section
922(g)(1).

Petitioner initially was represented by Thomas J.

Richardson.  Anthony Capozzi was substituted as counsel of record

on June 30, 2003.  While represented by Mr. Capozzi, Petitioner

pleaded guilty pursuant to a written Plea Agreement.  The Plea

Agreement provided:

The defendant also gives up any right he may
have to bring a post-conviction attack on his
conviction or sentence.  He specifically
agrees not to file a motion under 28 U.S.C. §
2255 or § 2241 attacking his conviction or
sentence.

The Plea Agreement specifically stated:

The defendant has read the charges against
him contained in the Indictment in this case,
and the charges have been fully explained to
him by counsel.  Further, the defendant fully
understands the nature and elements of the
crimes [sic] with which he has been charged,
together with the possible defenses thereto,

2

1  and has discussed them with counsel.

2  The defendant understands that in order to
   prove him guilty of the charge of being a
3  felon in possession of a firearm and
   ammunition, the government must prove each of
4  the following elements beyond a reasonable
   doubt:

5
   First, the defendant knowingly possessed a
6  firearm or ammunition that had been shipped
   or transported from one state to another;
7  and, Second, at the time the defendant
   possessed the firearm or ammunition, the
8  defendant had been convicted of a crime
   punishable by imprisonment for a term
9  exceeding one year.

10 The factual basis for Petitioner's guilty plea was set forth in

11 Exhibit A to the Plea Agreement:

12 On October 23, 2001, in the City of Fresno in
   the State and Eastern District of California,
13 the defendant knowingly possessed a firearm,
   to wit: a Jennings, model 38, .380 caliber
14 semiautomatic pistol, and Winchester .380
   caliber ammunition, in and affecting
15 commerce, in that the firearm and ammunition
   had been shipped and transported in
16 interstate and foreign commerce.

17 At the time that he possessed the firearm and
   ammunition, the defendant had been previously
18 convicted of Discharge of a Firearm at an
   Occupied Vehicle, in violation of California
19 Penal Code Section 246, on or about July 8,
   1993, in the Superior Court of California,
20 County of Fresno, Case Number 486174-6;
   Felony Spousal Abuse, in violation of
21 California Penal Code Section 273.5, on or
   about October 16, 1997, in the Superior Court
22 of California, County of Fresno, Case Number
   581888-5; and, Felony Battery on a Peace
23 Officer, in violation of California Penal
   Code Section 243(c), on or about December 10,
24 1989, in the Superior Court of California,
   County of Fresno, Case Number 615118-7, all
25 crimes punishable by a term of imprisonment
   exceeding one year.

26

3

During the change of plea colloquy before Judge Robert E. Coyle, Petitioner was placed under oath.  In pertinent part, the following occurred:

> THE COURT: Mr. Rice, would you please set forth the factual basis upon which the defendant is pleading?
>
> MR. RICE: Yes, Your Honor.  The elements that the government would have to prove in this case would be the defendant knowingly possessed a firearm or ammunition that had been shipped or transported from one state to another; and second, at the time the defendant possessed the firearm or ammunition, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year.
>
> To prove these elements the government would introduce evidence that on October the 23rd, 2001, in the City of Fresno in the State and Eastern District of California, the defendant knowingly possessed a firearm, to wit: A Jennings, model 38, .380 caliber semiautomatic pistol, and Winchester 38 caliber ammunition, in and affecting commerce, in that the firearm and ammunition had been shipped and transported in interstate or foreign commerce.
>
> At the time that he possessed the firearm and ammunition, he had previously been convicted of discharging a firearm at an occupied vehicle and violating the California Penal Code Section 246 on or about July the 8th, 1993 in the Superior Court of California, County of Fresno, case number 486174-6; felony spousal abuse, in violation of California Penal Code Section 273.5, on or about October the 16th, 1997 in the Superior Court of California, County of Fresno, case number 581888-5; and felony battery on a peace officer, in violation of California Penal Code Section 243(c), on or about December 10th, 1998, in the Superior Court of California, County of Fresno, case number 615118-7, all crimes punishable by a term of imprisonment exceeding one year.

THE COURT: Mr. Ceja, you understand that the government would have to prove all of those things as set forth by Mr. Rice beyond a reasonable doubt?

THE DEFENDANT: Yes.

THE COURT: And remember that you're under oath.  Do you agree with all those facts as set forth by Mr. Rice as to what you're pleading guilty to?

THE DEFENDANT: Yes.

THE COURT: Ms. Clerk, please accept the plea.

MR. CAPOZZI: And judge for the record, if I may first.  The U.S. Attorney and I have entered into an agreement that would allow us - this case and this sentence is dependent upon the number of convictions in the state court.  We have pulled those files in the state court and we are now in the process of filing writs to set aside those convictions.  Indeed, if just one is set aside, the mandatory minimum is no longer 15 years.  We'll go by the guidelines.  And indeed, if all three are set aside, the case would be dismissed.

The government has agreed to allow us the opportunity to followup with those motions in State court and allow us to continue out the sentence to give us the time to get that done.  I just want to say that for the record.

MR. RICE: That's correct.  Basically I've agreed to give Mr. Capozzi the time.  The only place that the priors can be litigated at all is in State court because they're State court convictions.  And Mr. Capozzi thinks that he has a good faith claim to set aside one of those priors.  He'll have to bring it in State court.  It would affect the sentence in the event that one were crossed out.  But that's all that we're agreeing.

MR. CAPOZZI: We're pleading guilty.

THE COURT: All right.  I understand.  I just

5

want to be sure I understood or the record is
clear as to what the understanding is.  Maybe
I misunderstood you, Mr. Capozzi.  My
understanding of what you said is that if all
of these are set aside, this case would be
dismissed.

MR. CAPOZZI: I think the government would
agree with that.

MR. RICE: That's correct.  If the State court
were to find that these were not valid prior
convictions and dismiss all those cases, then
the underlying felonies would go away.

THE COURT: All right.  That's fine.  I want
to make sure we're all on the same path.

MR. CAPOZZI: That's correct.

THE COURT: All right.

THE CLERK: Shall I take the plea?

MR. CAPOZZI: Yeah.

After entry of Petitioner's guilty plea, but before

sentencing, Roger Nuttall was substituted as counsel of record

for Petitioner.

On November 7, 2005, Mr. Nuttall, on behalf of Petitioner,

filed a motion to withdraw Petitioner's guilty plea on the ground

that Petitioner was factually innocent of violating Section

922(g)(1). (Doc. 46).[1]  In relevant part, the motion to withdraw

the guilty plea asserted that "Current Counsel's investigation

has discovered facts which were apparently known to both of

---

[1]Mr. Nuttall also filed a motion to strike armed career
criminal enhancement or, in the alternative, to withdraw guilty
plea, which asserted that Petitioner's prior convictions were not
qualifying felonies (Doc. 40).  This motion was denied by oral
ordered on November 16, 2005.

6

Defendant's prior counsel, but which were previously unsubmitted
to the court."   Attached to the motion to withdraw the guilty
plea was the Declaration of Salvador Ceja:

> 1.   I know that Everardo Silva Ceja did not
> have knowledge that the .380 Caliber Jennings
> handgun and bulletproof vest in question were
> in the Grey Convertible Mustang on October
> 23, 2001;
>
> 2.   Everardo and I (and others) periodically
> borrowed the Grey Convertible Mustang from
> its owner, for trips and special occasions;
>
> 3.   When I borrowed the Mustang, I would not
> perform an inventory search of the vehicle
> for weapons and/or other illegal items;
>
> 4.   On October 22, 2001, the night before
> Everardo's arrest, I had borrowed said
> Mustang, to entertain an acquaintance of
> mine;
>
> 5.   Said items belonged to this acquaintance
> of mine, and were placed in said vehicle the
> night before, in my presence, by said
> acquaintance, and without Everardo's
> knowledge;
>
> 6.   Said other individual and I were the only
> two people who knew that the handgun and vest
> were in the Grey Convertible Mustang, and we
> did not disclose this information to any
> other person, including Everardo.
>
> 7.   I am willing to meet with the Government
> to disclose the identity of this
> acquaintance, who hid handgun and vest in the
> Mustang, and to whom said items belonged.
>
> 8.   I told this information to both of
> Everardo's prior attorneys, Thomas Richardson
> and Anthony Capozzi.

Also attached to the motion to withdraw the guilty plea was
Petitioner's declaration:

> 1.   On October 23, 2001, I was peacefully

7

arrested by the Fresno Police Department.
Without incident, I was handcuffed and
searched.  The Police found the keys to a
Grey Convertible Mustang, which I had driven
to said location.

2.  This Mustang was not my vehicle, and I
had borrowed it that day, from its owner.

3.  I did not perform an inventory search of
this vehicle, and I was not aware that the
car contained a hidden .380 Caliber Jennings
handgun or bulletproof vest.

4.  Without my consent or probable cause, the
Police officers searched the vehicle.  When
the officers found said handgun, one of them
exclaimed, 'Bingo, A nice beautiful .380.'

5.  Afterwards, I questioned the officers
about whether they were going to charge me
with possession of this handgun.  They asked,
'Are you referring to the .22 caliber
pistol?'  I responded, 'It's a .380,' because
I had heard the officers describe it as such.

Mr. Nuttall contended that "these new facts, directly contradict

the inference that Mr. Ceja possessed the requisite knowledge and

intent needed to establish a sufficient nexus between the

Defendant and the specific firearm involved in this case.  (See,

e.g., U.S. v. Pahulu, (D.Utah, 2003) 274 F.Supp.2d 1235, 1240.)"

In opposing the motion to withdraw the guilty plea, the

United States presented investigation reports detailing the

Government's evidence against Petitioner: that agents saw

Petitioner, a wanted parolee, driving a car registered to his

father, Salvador Ceja, and his Petitioner's girlfriend, Zulema

Preciado; that agents saw Petitioner park the car at a

restaurant; that agents saw Petitioner's ex-girlfriend get out of

a Lincoln Navigator and meet Petitioner at his car; that an agent

8

saw Petitioner take off a dark garment and place it behind the driver's seat; that an agent saw Petitioner remove an object from his waist and put it in the console area of his car; and that agents saw Petitioner and his ex-girlfriend enter the restaurant and then leave the restaurant and return to their vehicles.  The agents then arrested Petitioner and found the keys to the vehicle in Petitioner's pocket.  The agents found a loaded .380 caliber semiautomatic pistol between the driver's seat and console, a bullet proof vest behind the driver's seat, and scales and drug paraphernalia in the trunk.  Petitioner asked the agents who is going to be charged; when an agent said the .22 caliber handgun, Petitioner spontaneously responded "that's a .380."  Petitioner's ex-girlfriend told the agents that when she met Petitioner at his car, Petitioner took off the bullet proof vest and put it behind the driver's seat; that Petitioner had the gun tucked in the right side of the waist band of his pants; that she told Petitioner she did not want him to bring the gun into the restaurant and asked him why he wanted to bring it with him; that Petitioner told her that people were after him and owed him money; and that she saw Petitioner remove the gun from his waistband and place it between the driver's seat and the console. Attached to the Government's opposition is report prepared by the Fresno County District Attorney, Bureau of Investigations, Investigative Report executed by Investigator Tom Flanigan on August 29, 2002, which stated:

    In regard to the 2001 Ford Mustang, Cal. Lic.

#4TUJ279 (r/o Preciado, Zulema or Ceja, Salvador, 1194 E. San Ramon, Fresno, CA.), I was able to determine that registered owner Preciado was the defendants [sic] girlfriend, while Salvador Ceja is the defendants [sic] father.  I was able to determine that Zulema Preciado had recently been residing at 5376 N. Valentine, #201, Fresno, however, she had recently moved to an unknown location in Sacramento.  I was able to determine that Mr. Salvador Ceja works for Attorney Thomas J. Richardson at 2950 Mariposa Street in Fresno.

On 08/29/02, at 1300 hours, I contacted Mr. Salvador Ceja at his business address.  I told Mr. Ceja that I wanted to ask him if his son (defendant Everardo) had permission to use the Mustang on 10/23/01, and also if Mr. Salvador Ceja had any knowledge of the stolen 380 pistol which was found in the Mustang. Mr. Salvador Ceja politely explained prior to talking to me that he wished to confir [sic] with his employer Mr. Richardson.  I served Mr. Salvador Ceja with a subpoena regarding this case.

In the reply brief in support of the motion to withdraw the guilty plea, Mr. Nuttall submitted another declaration by Salvador Ceja:

1.   That on or about August 29, 2002, I was contacted by Fresno County District Attorney Investigator Flanigan, who questioned me concerning the activity of my son, Everardo Silva Ceja, on or about October 23, 2001. Specifically, he asked me if I had knowledge of whether Everardo had permission to use the Mustang, and whether I had knowledge of the .380 pistol which had been found in said Mustang.

2.   That on that date, August 29, 2002, I <u>did</u> have knowledge that Everardo <u>did</u>, have permission to use the Mustang on October 23, 2001;

3.   That on August 29, 2002, I <u>did</u> have knowledge that the .380 caliber pistol, which was found in the Mustang, <u>did not</u> belong to

10

1  Everardo, but in fact truly belonged to
   another person, who had left said pistol in
2  the vehicle the night before;

3  4.   That when Detective [sic] Flanigan
   interviewed me, I asked to continue the
4  interview, so that I could confer with my
   employer, and Everardo's attorney, Thomas J.
5  Richardson, Esq.;

6  5.   That thereafter, I spoke with Mr.
   Richardson concerning these matters, and Mr.
7  Richardson advised me that I should not
   disclose this information to Investigator
8  Flanigan; and

9  6.   That I have been willing to disclose this
   information to the government, and that I
10 would have earlier disclosed this
   information, but for the advice of Mr.
11 Richardson.

12    A hearing on this motion to withdraw Petitioner's guilty

13 plea was held on November 22, 2005 at which the following

14 occurred:

15 THE COURT: Have you now had sufficient time,
   Mr. Nuttall, to confer with your client and
16 to enable him to determine what is in his
   best interests?
17
   MR. NUTTALL: Yes, I have.  Just for the
18 record, Your Honor, I did, in that process, I
   made a request.  Since I came in late in the
19 case and made a request, actually yesterday,
   to Mr. Rice to - concerning certain aspects
20 of the current charge that I was not clear
   about.  And I appreciate, he was very
21 responsive in light of the time frame here.
   And I received that today and spent some time
22 with it.  My advice to my client is that we
   withdraw the motion to withdraw the plea.  He
23 agrees with me.  And so we do withdraw that
   motion.
24
   THE COURT: All right.  Mr. Ceja, have you
25 heard the statements of your attorney, Mr.
   Nuttall?
26

11

1          THE DEFENDANT: Yes.

2          THE COURT: And have you had a chance to
           analyze this decision?
3
           THE DEFENDANT: Yes.
4
           THE COURT: And after having consulted with
5          your attorney, do you agree with his action
           in determining that your motion to withdraw
6          your guilty plea in this case - because I
           have said I would aford you a fair trial and
7          I'm certainly willing to provide you with a
           jury trial, to determine whether or not these
8          elements of the crime can be proved beyond a
           reasonable doubt - that it is in your best
9          interest to proceed to withdraw that motion?

10         THE DEFENDANT: Yes.

11 The Court then proceeded with sentencing.  At sentencing,

12 Petitioner's mother, Endina Silva Garcia Ceja spoke:

13         MRS. CEJA: First of all, judge, thank you
           very much for letting me speak.  And second,
14         I would like to ask you to give me an
           opportunity so that my son not be sentenced
15         because, in fact, he is not guilty.  He had
           no knowledge of the weapons that were in the
16         car.  First of all, the car was not his.

17         And the first attorney we had, we tried to
           explain that to him all the time, but he kept
18         saying that that was not necessary.  He said
           that that was not necessary, that he was
19         going to take care of everything without the
           need to clarify things.
20
           And also, please, I just don't want him to go
21         before a jury because I just don't trust that
           system too much.  And because first of all,
22         we're Hispanics and he has been to the point
           where he was almost deported.  And Mr. Thomas
23         Richardson, we kept telling him that all the
           time.  And that he was from here.  And he
24         just doesn't listen to that because every
           once in a while, he would ask us again, 'What
25         place in Mexico was your son born?'  And that
           just made no sense because we have known him
26         for quite a while.

                              12

THE COURT: Your son was born in the United States and is a citizen of the United States.

MS. CEJA: Yes.  And also, it's just that, well, I'd like you to know, well, it's not our fault.  And I know you're not at fault either because the first attorney that we had for two years, he was not doing anything at all.  He was just lying to us.  We didn't discover that, you know, until two years afterwards.

And then we hired the second attorney, Mr. Anthony Capozzi, and he said, well, I'll take care of everything in six or seven months.  And then it was almost a year.  Time had gone by.  And then we talked to him, you know, as to when he was going to take care of things.  Only just a few days we're going to take care of things.  And not until maybe another year went by and nothing was done.  Not until we got this present attorney, the one who's helping us out right now.

And also this present attorney, we've told him that our son has nothing to do with it.  That my son, that he's not guilty of this.  That he didn't know anything about the gun or anything else that was in the car.  That he - there's no reason that he should have to pay for something that he did not do because he didn't know anything about this.

And then - and then he said, well, he should plead guilty - the - Mr. Capozzi said, he should, he said, and then I'll take care of everything.  But now that he pled guilty, he's trapped.  He's trapped into this and something - for something he did not do.

And I just don't want for it to be the case that maybe years later, we found out, okay, well, now it comes out that he was innocent because we know we have the evidence that he had nothing to do with this at all.

Because we've tried to prove it to the other two, the other two attorneys that we had, that the weapons, that he had nothing to do with that.  Or anything to do with the car.  He had nothing to do with that.

13

1    And then the attorney, Roger Nuttall, he is
     aware of all this and he did pay attention as
2    far as all this.  Although he did tell us
     from the beginning that he was very busy, but
3    that he was going to try and help us as best
     he could.
4
     And judge, I really appreciate your patience
5    as well as the District Attorney's [sic]
     because I just don't want him to be
6    sentenced.  I don't want him to go to a jury
     - I mean, a trial before a jury because I
7    just don't want that.  Because in the future,
     if you find out that he's not guilty, also of
8    all the other cases in the past, that way we
     were trying to avoid for him being sentenced
9    to like 15 years in prison.  We're trying to
     save him from all those things that he's
10   facing.

11   If it's possible that it can be done.  I
     believe it's in your hands.
12
     ...
13
     THE COURT: I will explain to you what my
14   understanding of the status of our
     proceedings are so that you will know what
15   the law is.

16   I have offered to permit your son to have a
     trial before a jury and I guarantee you it
17   will be a fair trial.

18   MRS. CEJA: Really, I just don't - I -
     truthfully, I just don't want that because
19   what I have seen recently is that there's
     some that they have been convicted by juries
20   and some that have even died and then it
     comes out later that they were innocent.  I
21   just don't want that.

22   THE COURT: I understand your concern.  But I
     believe that our jury would be representative
23   in this district.  There would be Hispanic
     individuals on our jury.  And we would have a
24   fair trial.

25   The law concerning this matter of the
     agreement that your son has made with the
26   government, and with regard to his prior

14

convictions, is one that has to be addressed
in the correct sequence.  In other words, the
correct legal steps must be taken to attack,
if they can be legally attacked, his prior
convictions and that is something that cannot
start in this court.  It has to start in the
courts where your son was convicted
originally.  And those are state courts.
That is a different legal system from the
United States justice system.  You are now in
a United States court.

The choice in this court is either an
agreement to accept responsibility and plead
to the crime, reserving all other legal
rights that exist, to try to attack the prior
convictions and to show any other basis for
upsetting the sentence that is recommended by
the probation officer and seems to be called
for under the law.  Assuming the truth of the
charges.

Otherwise, the alternative is to test the
charges before a jury and to determine
whether the elements of those charges can be
proved beyond a reasonable doubt under the
law.  And that right is available to your
son.  And I will afford him that right and,
again, I state to you that the trial will be
fair.

And I can tell you that the prosecutor in
this case is an honest and an honorable man.
Your attorney is one of the best attorneys
who appear in this court and has the ability,
the wisdom, the experience to do his best for
your son in this case.

And so he, meaning your son, does have the
right and even though he's entered his plea,
I think there are enough circumstances
because it was a different attorney and
because the analysis that was presented that
I've seen in the lower courts does not
include everything that Mr. Nuttall has now
raised and apparently you and your son and
others of your family have provided.  But I
can't comment on the merits of that because
that isn't before me today to decide.  My
only alternative, as I have stated and I'll
state them again so you can understand, is

15

1    either we have a trial - Mr. Rice is ready to
     have a trial.  He will bring the evidence he
2    has and that evidence may be tested, may be
     challenged.  And then we would have a jury
3    decide the truth.

4    Or, if, as Mr. Nuttall has stated, to lower
     the risk that your son faces because of the
5    prior convictions and because of the nature
     of the offense charged in this case, he would
6    have at least a finite exposure, meaning he
     would know what his sentence is going to be
7    and then he can take the steps that the law
     provides he may take, through Mr. Nuttall, to
8    try to affect that result by either
     overturning the State convictions or doing
9    whatever else would be available.  And I
     can't speak to that because I can't give
10   legal advice.

11   But those are really the choices that are
     available unless Mr. Nuttall suggests
12   something else.  And I don't see any other
     alternatives.  None have been suggested under
13   the law.  Do you understand what I've said?

14   MRS. CEJA: Well, there are certain things
     that I need to understand and there are
15   others that I would need mor time for my
     attorney - well, for the attorney to be able
16   to take more time to explain to me.  But also
     - but if you could give me more time, that
17   maybe until after the first or, you know,
     after Christmas time, because, you know, that
18   way we can really be more conscious as to
     what's going on.  Because, you know, there's
19   just so many things going on right now, you
     know, all these holidays that are coming up.
20   That way we could know exactly what we're
     going to be doing.
21
     THE COURT: Well, I don't know what else there
22   is to -

23   MR. NUTTALL: Let me, if I may, address.  I
     think what - what needs to be addressed.  If
24   that would be all right.

25   THE COURT: Yes.

26   MR. NUTTALL: Your Honor, what they're talking

                              16

1   about - and just so the record is clear.  I
    appreciate the Court's comments here and
2   listening so attentively to Mrs. Ceja.  Much
    appreciated.  We had talked - I'm aware - let
3   me make it clear.

4   For the record, we have withdrawn our motion
    to withdraw the plea.  We're not seeking a
5   trial.  I appreciate the Court's indication
    that we can have one.  My advice to my client
6   is to proceed to sentencing.

7   Ultimately, at the time of sentencing today,
    we're going to - I'd like to make a request
8   that the Court actually, once sentence is
    imposed, stay imposition or execution or the
9   transfer for 90 to 150 days so that we can
    facilitate the work that we need to do to
10  collaterally attack the prior convictions
    without having to travel a great distance to
11  do that.

12  ...

13  THE COURT: I'd be willing to let Mr. Ceja
    stay here while you pursued the habeas
14  remedies if the law permits it.

15  MR. NUTTALL: That would be fine.  So I think
    with that, we can proceed.  We can have a bit
16  of time to work on that.

17  During the sentencing elocution, Petitioner stated:

18  THE DEFENDANT: I never signed for these 15
    years.  If Mr. Capozzi would have never
19  promised me that he was going to get some of
    my priors -
20
    THE COURT: Set aside.
21
    THE DEFENDANT: Yeah.  Because if I was truly
22  guilty, I would have accepted the four years
    in the state, of course, and I would have
23  been home by now.  So I didn't do that.  And
    Mr. Capozzi told me don't worry about it,
24  he'll have me out of here in six, seven
    months.  And that's the only reason I signed
25  for the 15.

26  THE COURT: All right.  It sounds to me as if

17

1      we don't have a voluntary plea.

2      MR. RICE: It doesn't matter to me.  If he
       wants a trial, I'll give him a trial.

3

4      THE COURT: I'm - but I'm sufficiently
       concerned that I think we're just inviting
       catastrophe here, Mr. Nuttall.  Mr. Ceja, you

5      know, says he's not guilty, that he was in
       effect misled or simply did not understand

6      Mr. Capozzi's advice.

7      Mr. Capozzi - and it's being represented to
       me, and it's said in his declaration, that he

8      would not face the sentence, the mandatory
       minimum 15 year sentence in this court that

9      he is facing, and that he could - as I
       interpret it, the language of Mr. Capozzi,

10     Mr. Ceja could be assured that one or more of
       the priors were going to be set aside.  And

11     that's the only reason he took this deal
       because he didn't think he'd be doing any

12     time as his declaration says.

13     And so I think that under the totality of the
       circumstances, that I - I know that we're in

14     the middle of sentencing, but I think we're
       going to have to go back to your motion to

15     withdraw the plea because what I'm doing is
       I've heard these rounds [sic] stated again by

16     your client.  Now, Mr. Capozzi isn't here
       obviously, but I sense that we would be, I

17     think, on legally firmer ground all around
       here if we try this case.  I don't really see

18     that we have an alternative.

19     THE DEFENDANT: I'm accepting the plea.  I
       just want the chance for Mr. Nuttall to fight

20     my State priors and have a chance to we can
       talk before I get transferred.

21

22     THE COURT: Well, I've already said as long as
       the law permits that, I'm -

23     THE DEFENDANT: That's all I want.

24     THE COURT: I'll permit you to stay here and
       -

25

26     THE DEFENDANT: I just don't want to have to
       get more than the 15 years.

                          18

1      THE COURT: I understand.

2      THE DEFENDANT: That's all I'm worried about.

3      MR. RICE: I guess that's really the problem.
       If he does go to trial, I will seek 27 to 34
4      years.

5      THE COURT: Right.  That's understood.  We all
       know that.  But I just heard Mr. Ceja say
6      that he's accepting the plea.

7      MR. NUTTALL: Yes.

8      THE COURT: And so I want to be - I want to be
       clear as to - because I don't want you to be
9      in the position, Mr. Ceja, where you think
       that anybody's promised you anything and then
10     you don't get it and your going to feel
       you've been betrayed.
11
       THE DEFENDANT: Well, I feel ... confident
12     that Mr. Nuttall is going to take care -

13     THE COURT: He'll do the best he can.  And he
       certainly is a competent attorney.  He has
14     the ability - if the law will support it and
       the facts support it, he has the ability to
15     do the job.

16     All right.  So you understand that if we go
       forward with the sentencing now today and you
17     accept the plea, that that avenue is - unless
       the higher court says that there's a basis to
18     set it aside or overturn it, that avenue will
       be foreclosed.  You understand?
19
       THE DEFENDANT: Yeah.
20
       THE COURT: And are you willing to proceed
21     today with sentencing?  Is this your
       voluntary choice, having been fully informed
22     by Mr. Nuttall as to the risks?

23     THE DEFENDANT: Yes.

24     THE COURT: All right.  Do you wish to say
       anything else, Mr. Ceja?
25
       THE DEFENDANT: That's it.  Thank you.  Both
26     of you, Mr. Rice.

                          19

...

THE COURT: ... All right.  Is there any legal
cause why sentence should not now be
pronounced?

MR. NUTTALL:  - no, Your Honor.

Petitioner was sentenced on November 22, 2005 to 180 months

incarceration and a 60 month term of supervised release.  By

Orders filed on March 6, 2006, the transfer of Petitioner from

the Fresno County Jail to a Federal Institution was stayed

through April 28, 2006 while Petitioner's counsel collaterally

attacked Petitioner's prior state convictions.

Petitioner appealed his conviction and sentence and the

Ninth Circuit affirmed.[2]

B.  GROUNDS FOR SECTION 2255 MOTION.

As grounds for relief, Petitioner asserts:

B.  Petitioner for the first time in this
habeas corpus petition 28 U.S.C. § 2255 is
attacking his plea to the 'possession' of a
firearm charge on the ground that the plea
was not supported by an adequate factual
record.  In this habeas corpus petitioner
claims factual and legal innocence.  In
summary, petitioner posits that he was never
informed by Judge Coyle, at the plea hearing,
that it was an essential element of the
offense that petitioner must have had
knowledge of the presence of the weapon prior
to or during the possession in order to
satisfy the element of the offense.

---

[2]In the Plea Agreement Petitioner waived his right to appeal
as long as his sentence was consistent with the agreement.
Although Petitioner was sentenced in accordance with the Plea
Agreement, Mr. Nuttall requested and Mr. Rice agreed that
Petitioner could appeal whether the three prior convictions
constitute categorical crimes of violence within the meaning of the
armed career criminal enhancement.

C.   Petitioner, therefore, argues that the
hearing court did not adequately advise him
of the exact nature of the § 924(e) charge,
the guilty plea was not knowing and voluntary
was required by due process, and the hearing
court did not have a legally sufficient
factual basis for accepting the guilty plea.

D.   Petitioner was unaware of the presence of
a weapon at any stage of which the offense
conduct was based.  His knowledge of the
presence of the weapon was not until after
his arrest.  Petitioner in deciding to plead
guilty did so with the (incorrect)
understanding that he was guilty of the
offense, by simply being in the borrowed
vehicle that he was driving on the day of his
arrest.  Thus, he was pleading guilty and
simultaneously denying culpability.  The
record will conclusively demonstrate same.
(See Exhibit 'E' pg. 17 [Transcript of
November 22, 2005 hearing on Petitioner's
motion to withdraw guilty plea and
sentencing]).

Petitioner contends that his guilty plea to possession of the

firearm was not knowing, intelligent, and voluntary "because: (1)

He was misinformed as to the factual basis for a § 924(e)(1)

violation, and (2) He was hobbled by the ineffective assistance

of counsel, Thomas J. Richardson and Anthony Capozzi during

pretrial proceeding; during plea negotiations and at the plea

hearing."

Petitioner's motion is supported by the Declaration of

Salvador Ceja executed on December 12, 2008:

[O]n October 23, 2001 Everardo Silva Ceja did
not had [sic] any knowledge that the .380
caliber Jennings handgun and bulletproof vest
in question were in the Grey Convertible Ford
Mustang he had borrowed in [sic] that day of
his arrest.  I Salvador Ceja and Efren Gayton
had the gun in the car and we were the only
two persons who knew about the gun in

21

question being in the vehicle because Efren
put it there on October 22, 2001 in my
presence the night before Everardo's arrest
because we were working together that
evening.  The night before Everardo's arrest
I, Salvador Ceja was driving the said Ford
Mustang because I was performing a very, very
dangerous investigation for the government
and for that reason it was very important for
our own safety to have the gun with us.  I
know that it is against the law to carry an
unregistered weapon, but in this case I
decided to take the risk to be punished by
the law for carrying an unregistered gun
rather than being murdered by those outlaws
[sic] members of the Millenium [sic] Drug
Cartel.  Fortunately I was not punished, I
was not murdered either, but yes, I was
seriously hurt by the government for
punishing a member of my family without
having any fault.  The investigation that I
was performing for the government was
regarding a homicide of four people in
Chicago, Illinois in which Efren's brother
Jose Luis Gayton who was also my godson was
one of the victims who was brutally murdered
there.  I worked in this investigation for
approximately 3 years until I discovered
those who were the persons in charge in
committing this horrible crime.  The persons
in charge were the most fearsome and
bloodthirsty gunmen of the most dangerous
drug cartel in Mexico. 'The Millenium [sic]
Drug Cartel of the Valencia Brothers.'  I
gave this information to all three of
Everardo's prior attorneys, Thomas J.
Richardson, Anthony Capozzi and Mr. Roger T.
Nuttall.  At the evidentiary hearing I will
take this same information to the judge but
with all the proofs to demonstrate that what
I declare here is true.  Furthermore, I tried
to speak with the prosecutor by means of Mr.
Roger T. Nuttall to clarify as to who put the
gun in the car in [sic] October 22 [sic],
2001, and who knew that the gun was there.
Unfortunately all my attempts were useless
because the prosecutor refused to speak to me
because according to him I was not credible.
I do not explain myself as to why the
prosecutor could judge me before speaking
with me.  I cannot believe that he said that

> my declaration was lacking of [sic]
> credibility, without earlier knowing if it is
> truth or not about what I wanted to speak
> about.  But at the evidentiary hearing I am
> going to present indisputable evidence to
> prove that my declaration does not lack
> credibility.  Finally, I look forward to
> meeting with the prosecutor and or any
> government Agent of his choice for
> questioning regarding the gun in question
> from the October 23, 2201 incident in which
> an innocent person was wrongfully condemned
> for a crime that he did not commit.  I am
> ready for any questioner.  For more details
> with regard to my declaration you can contact
> FPD Detective Carlos Leal at (559) 696-1656
> and, or [sic] FBI Agent Sunny Santiago at
> (559) 436-4474.  They will provide the
> necessary evidence to show that my
> declaration is credible.

### 1.   Failure to Comply with Rule 11.

"To establish a violation of § 922(g)(1), the government must prove three elements beyond a reasonable doubt: (1) that the defendant was a convicted felon; (2) that the defendant was in knowing possession of a firearm; and (3) that the firearm was in or affecting interstate commerce."  *United States v. Beasley,* 346 F.3d 930, 934 (9th Cir.2003), *cert. denied*, 542 U.S. 921 (2004).  "To establish that a defendant acted 'knowingly,' the prosecution need not prove that the defendant knew that his possession of a firearm was unlawful; the prosecution need only prove that the defendant consciously possessed what he knew to be a firearm."  *Id.*

Rule 11(b)(1)(G), Federal Rules of Criminal Procedure, provides that, during the change of plea colloquy, the Court must advise the defendant of "the nature of the charge to which the

defendant is pleading."  Rule 11(b)(3) requires that, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."

"For a section 2255 movant to successfully challenge a guilty plea based upon a violation of Rule 11, he must establish that the violation amounted to a jurisdictional or constitutional error or that the violation resulted in a complete miscarriage of justice or in a proceeding inconsistent with the demands of fair procedure."  *United States v. Grewal*, 825 F.2d 220, 222 (9th Cir.1987); *United States v. Timmreck*, 441 U.S. 780, 783-785 (1979)(technical violations of Rule 11 will not support collateral relief).  "He must also establish that he was prejudiced in that he was unaware of the consequences of his plea, and, if properly advised, would not have pleaded guilty."  *Id.*

Assuming *arguendo* that the Rule 11 colloquy did not satisfy the requirements of Rule 11(b)(1)(G) and (b)(3), Petitioner cannot establish that, had he known that knowing possession of a firearm required proof that he consciously possessed what he knew to be a firearm, he would not have pleaded guilty.  Mr. Nuttall moved to withdraw the guilty plea based on Petitioner's contention that he did not know the weapon was in the vehicle, presented declarations in support of that contention, and that he was actually innocent of violating Section 922(g).  The motion to withdraw the guilty plea was fully briefed and set for hearing. Petitioner withdrew the motion to withdraw the guilty plea

despite repeated assurances from the United States and the Court that Petitioner could withdraw his guilty plea and proceed to trial.  The Court twice offered the opportunity to Petitioner to proceed to trial based on his claim that he did not knowingly possess the firearm.  At the sentencing hearing, Petitioner's mother again asserted that Petitioner did not know the gun was in the car and, again, the Court and the United States advised Petitioner he would then be allowed to withdraw the guilty plea and proceed to trial.  Petitioner stated that he did not want to undergo the risk of trial and insisted on maintaining his guilty plea.

## 2.   Ineffective Assistance of Counsel.

Petitioner contends that he was denied the effective assistance of counsel because of counsel's failure to advise him that proof of knowing possession for purposes of Section 922(g) required proof that he consciously possessed what he knew to be a firearm.

To establish an ineffective assistance of counsel claim, Petitioner must show: (1) the representation was deficient, falling "below an objective standard of reasonableness"; and (2) the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The Court need not evaluate both prongs of the *Strickland* test if the petitioner fails to establish one or the other.  *Strickland*, *id.* at 697; *Thomas v. Borg*, 159 F.3d 1147, 1152 (9th Cir.1998), *cert. denied*, 526 U.S. 1055 (1999).

Under the first prong, Petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id.* at 690.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct of counsel's performance at the time."  *Id.* at 689.  The proper inquiry is whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*  The court must apply "a heavy measure of deference to counsel's judgments," and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."  *Id.* at 690-691.  "The relevant inquiry under *Strickland* is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable."  *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir.1988).  "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."  *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir.1989).  A decision to waive an issue where there is little or no likelihood of success and concentrate on other issues is indicative of competence, not

26

1  ineffectiveness.  *See Miller v. Keeney*, 882 F.2d 1428, 1434 (9th
2  Cir.1989).

3      To meet the prejudice requirement, the petitioner must
4  demonstrate that errors "actually had an adverse effect on the
5  defense." *Strickland*, 466 U.S. at 693.  "It is [also] not enough
6  for the defendant to show that the errors had some conceivable
7  effect on the outcome of the proceeding." *Id.*  "Virtually every
8  act or omission of counsel would meet that test, and not every
9  error that conceivably could have influenced the outcome
10 undermines the reliability of the result of the proceeding." *Id.*
11 "The defendant must show that there is a reasonable probability
12 that, but for counsel's unprofessional errors, the result of the
13 proceeding would have been different.  A reasonable probability
14 is a probability sufficient to undermine confidence in the
15 outcome.  *Id.* at 694.  Where a petitioner enters a guilty plea
16 upon the advice of counsel, the voluntariness of the plea depends
17 upon whether the petitioner received effective assistance of
18 counsel.  In order to prevail on an ineffective assistance of
19 counsel claim, "the [petitioner] must show that there is a
20 reasonable probability that, but for counsel's errors, he would
21 not have pleaded guilty and would have insisted on going to
22 trial." *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985).

23     Petitioner's claim of ineffective assistance of counsel
24 fails on the prejudice prong.  Petitioner cannot demonstrate
25 that, but for counsel's errors, he would not have pleaded guilty
26 and would have insisted on going to trial.  Mr. Nuttall moved to

withdraw the guilty plea based on Petitioner's contention that he did not know the weapon was in the vehicle, presented declarations in support of that contention, and argued that Petitioner was actually innocent of violating Section 922(g). The motion to withdraw the guilty plea was fully briefed and set for hearing.  Counsel properly presented the facts that supported his alleged claim of actual innocence.  Based on this proffer, the Court offered to set aside the plea and proceed to trial. Petitioner withdrew the motion to withdraw the guilty plea, despite repeated assurances from the United States and the Court that Petitioner's motion to withdraw his guilty plea would be granted and he could proceed to trial.  At the sentencing hearing, Petitioner's mother again asserted that Petitioner did not know the gun was in the car and, again, the Court and the United States stated that Petitioner would be allowed to withdraw the guilty plea and proceed to trial.  Petitioner then stated in open court that he accepted the guilty plea.[3]

## CONCLUSION

For the reasons stated:

1.   Petitioner Everardo Silva Ceja's motion to vacate, set

_____

[3]Petitioner's motion contains a lengthy discussion of the sufficiency of the Government's evidence, including claims that one of the police reports was fabricated, and of his father's declaration and demands an evidentiary hearing on the issue of his actual innocence.  Petitioner's discussion of the sufficiency of the Government's evidence is irrelevant to the resolution of his Section 2255 motion because Petitioner pleaded guilty and cannot demonstrate a basis for setting aside his guilty plea through his Section 2255 motion.  For the same reason, Petitioner is not entitled to an evidentiary hearing.

aside or correct sentence pursuant to 28 U.S.C. § 2255 is DENIED;

2.  The Clerk of the Court is directed to ENTER JUDGMENT FOR RESPONDENT.

IT IS SO ORDERED.

Dated:   **January 9, 2009**                    /s/ Oliver W. Wanger
                                    UNITED STATES DISTRICT JUDGE

29